IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FILED

OCT - 1 2012

CLERK, US DISTRICT COURT
NORFOLK, VA

JERRY WILSON,

      Plaintiff

    v.                                Civil No. 4:11cv102

MICHAEL J. ASTRUE,

      Commissioner of Social
      Security

## OPINION AND ORDER

This matter comes before the Court on Jerry Wilson's ("Plaintiff") objections to the Report and Recommendation of the Magistrate Judge. See generally Pl.'s Objs. to Rep. and Rec. of Mag. Judge, ECF No. 16. For the reasons stated herein, the Court: (1) **REJECTS** the Magistrate's Report and Recommendation, ECF No. 16; (2) **DENIES** the Plaintiff's Motion for Summary Judgment, ECF No. 9; (3) **DENIES** the Defendant's Motion for Summary Judgment, ECF No. 11; (4) **REVERESES** the Commissioner's disability determination; and (5) **REMANDS** the case for a rehearing pursuant to the Court's authority under 42 U.S.C. § 405(g).

## I.    PROCEDURAL BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits on May 8, 2009 (R. 124-131),[1] alleging disability since October 26, 2007 due to knee injury, back and neck pain, high blood pressure, and high cholesterol. R. 124, 165. The Social Security Administration denied

---

[1] Page citations are to the administrative record. Admin. R., ECF No. 6.

Plaintiff's application initially, R. 67-77, and on reconsideration, R. 78-89. Plaintiff requested and received an administrative hearing on August 9, 2010 before Administrative Law Judge ("ALJ") Tom Duann. R. 40-66. The ALJ issued a decision denying Plaintiff's claim on August 27, 2010. R. 14-24. On May 5, 2011, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner of the Social Security Administration ("Commissioner"). R. 1-5. The Appeals Council did, however, receive and make part of the evidence Exhibits 11E, 10F, and 11F. R. 4 (referencing: (1) Exhibit 11E, R. 208-13; (2) Exhibit 10F, R. 428-71; and (3) Exhibit 11F, R. 472-515).

Plaintiff brought an action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner that denied Plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. Compl., ECF No. 1. Defendant filed an answer on September 15, 2011. Def.'s Answer, ECF No. 5. The action was referred to the United States Magistrate Judge Tommy E. Miller pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia on cross-motions for Summary Judgment. Order, ECF No. 7. On November 7, 2011, Plaintiff Wilson filed a Motion for Summary Judgment. Pl.'s Mot. for Summ. J., ECF No. 9. The Defendant followed with a response to Plaintiff's motion, and his own Motion for Summary Judgment, on December 6, 2011. Def.'s Mot. for Summ. J., ECF No. 11; Def.'s Mem. In Supp. of Mot. for Summ. J., ECF No. 12. The Plaintiff filed a response in support of his motion on December 21, 2011. Pl.'s Resp., ECF No. 13.

On July 2, 2012, Magistrate Judge Miller filed a Report and Recommendation which

recommends that the final decision of the Commissioner be affirmed. Mag. Judge's Rep. and Rec. 29, ECF No. 14. Pursuant to 28 U.S.C. § 636(b)(1)(c), Plaintiff filed written objections to the Magistrate Judge's Report and Recommendation on July 17, 2012. Pl.'s Objs. to the Rep. and Rec. of the Mag. Judge, ECF No. 14. The Defendant responded to those objections on July 31, 2012. Def.'s Resp. to P.'s Objs. to the Rep. and Rec. of the Mag. Judge, ECF No. 16.

## II.    FACTUAL BACKGROUND

### A.    Medical Evidence in the Record

Plaintiff was born in 1961. R. 124. He graduated from high school, served in the U.S. Army for four years, and worked as a sheet metal mechanic for Northrop Grumman Shipbuilding ("Northrop") until October 26, 2007, when he sustained a left knee injury while at work. R. 137-40, 165-66, 302, 305, 393. Plaintiff received temporary total disability benefits through Workers' Compensation between October 30, 2007 and September 4, 2008, and temporary partial disability benefits beginning on September 5, 2008. R. 132-33.

On October 30, 2007, Plaintiff underwent an MRI of his left knee, which revealed evidence of a tear of the medial meniscus, a possible tear of the lateral meniscus, small joint effusion, advanced chondromalacia patella and patellofemoral degenerative changes, and intact ligaments. R. 307-08.

In November 2007, Plaintiff sought medical treatment for his left knee at York River Orthopaedic Clinic. R. 393. He was treated by Hugh M. Bryan III, M.D., an orthopaedic surgeon, who recommended that Plaintiff undergo a left knee arthroscopy. R. 390-92.

From November 13, 2007 to November 28, 2007, Plaintiff was assigned the following temporary restrictions: (1) no vertical ladders, inclined ladders, crawling, kneeling or squatting; (2) climbing stairs to and from the job only; and (3) occasional standing, twisting, and use of foot

controls. R. 297.

On December 4, 2007, Plaintiff underwent left knee arthroscopy and debridemen. R. 337, 388. It was noted that he suffered from moderate degenerative joint disease changes, particularly in the medial compartment, large osteophytes, and a degenerative tear of the medial meniscus. Id. From December 4, 2007 to January 3, 2008, Plaintiff was required to stop working completely. R. 294-95.

On January 3, 2008, Plaintiff was released to sedentary work only. R. 294, 386. Dr. Bryan completed a disabled parking placard application indicating that, from January 2008 to April of 2008, Plaintiff was unable to walk without the use of, or assistance from, any of the following: another person, brace, cane, crutch, prosthetic device, wheelchair or other assistive device. R. 293.

In follow-up examinations with Dr. Bryan in January and February 2008, plaintiff reported persistent pain and swelling, with slight improvement. R. 383, 386. Plaintiff attended physical therapy and was prescribed a cane, as well as Feldene, a nonsteroidal anti-inflammatory drug. R. 383-86.

In March 2008, Plaintiff reported doing some light activities, but ambulation was limited to 30 minutes before he had to take a break. R. 383. Dr. Bryan diagnosed Plaintiff with persistent pain post knee arthroscopy, and some underlying degenerative joint disease. R. 383. He allowed Plaintiff to gradually increase his activities, including increasing his driving restrictions to four hours per day. R. 383.

Plaintiff underwent physical therapy at Tidewater Physical Therapy from December 2007 through April 2007, at which time his range of motion was within normal limits, and his knee

flexion/extension strength was 4/5. R. 320-330.

Between March 2008 and May 2008, Plaintiff received a series of intraarticular steroid injections and supartz injections in his left knee. R. 381-83. In April 2008, Plaintiff was able to walk for one hour at a time and ascend stairs sequentially with pain after two to three flights. R. 382. He was unable to completely mow his lawn. R. 382.

In June 2008, Dr. Bryan noted that Plaintiff was doing reasonably well and had minimal knee pain. R. 380. Plaintiff reported that he was attempting to obtain light duties at work or find a new job. R. 380. In a <u>Physical Abilities Form</u>, dated June 11, 2008, Dr. Bryan opined that Plaintiff was temporarily restricted to: (1) lifting 20 pounds; (2) no climbing of ladders; (3) climbing stairs only to and from the job; (4) occasional (1-2.5 hours) crawling, kneeling, and squatting; (5) frequent (2.5-5.0 hours) bending, standing, twisting, and use of foot controls. R. 285.

In September 2008, based on Dr. Bryan's release to light duty work, Plaintiff was ordered by Workers' Compensation to work as a security guard for another employer because Northrop did not have light duty work available for him. R. 159, 165. Plaintiff worked part-time as a security guard from September 2008 to January 2009. R. 140-41, 157, 165-66.

In November 2008, Plaintiff complained of neck pain arising from his work in the security guard shack. R. 379. He also complained of pain radiating down his lower back. R. 378-79. Andrea B. Crawford, M.D., a colleague of Dr. Bryan, noted that Plaintiff had a prior MRI of his cervical spine in 2005, which had shown some spinal stenosis. R. 378. On examination, Plaintiff exhibited decreased range of motion in his neck with some tenderness just below his occiput. R. 379. He had no tenderness of his lower back. R. 378. Dr. Crawford

suggested that Plaintiff consider putting "a rear view mirror up and get a swivel chair" to help him. R. 378. Dr. Crawford prescribed Soma, a muscle relaxant, in addition to Feldene, and advised Plaintiff to continue doing neck exercises. R. 375-76, 378.

In January 2009, Plaintiff reported episodes of fairly severe knee pain that occurred one to two times per week for a brief duration. R. 373. He also reported improvement with regard to his neck and lower back pain. R. 373. Dr. Bryan noted that Plaintiff was still working in a guard shack and that he had been able to do his duties reasonably well. R. 373. In a Physical Abilities Form, dated January 12, 2009, Dr. Bryan reported that Plaintiff was still restricted to: (1) lifting 20 pounds; (2) no climbing of ladders; (3) climbing stairs only to and from the job; (4) occasional (1-2.5 hours) crawling, kneeling, and squatting; (5) frequent (2.5-5.0 hours) bending, standing, and twisting. R. 281.

Plaintiff reported that he stopped working as a security guard in January 2009 because he was never called back by the employer to work or given additional hours. R. 157, 165. Plaintiff indicated that his medical condition did not cause him to stop working. R. 157.

In April 2009, Plaintiff complained of ongoing left knee pain. R. 371. Plaintiff could ambulate moderate distances, but experienced pain when doing yard work or a significant amount of walking. R. 371. Plaintiff's gait and station were normal. R. 371. X-rays of Plaintiff's left knee showed moderate degenerative joint disease with areas that appeared to have bone on bone contact. R. 372. Plaintiff agreed to proceed with a left total knee replacement. R. 372.

On May 11, 2009, Plaintiff underwent an MRI of his knee which revealed moderate to severe osteoarthritis with no evidence of discrete meniscal tear. R. 363, 399. On May 28, 2009,

Plaintiff was taken out of work until after surgery. R. 278.

Plaintiff underwent a left total knee replacement on June 2, 2009. R. 309-11. Dr. Bryan recommended that Plaintiff remain out of work for the following six to eight weeks. R. 277, 348. Plaintiff attended physical therapy for his left knee between July and September 2009. R. 317-18, 320-22, 343.

In July 2009, Michael Hartman, M.D., a State agency medical consultant,[2] reviewed the record regarding Plaintiff's DIB claim. R. 67-76. Dr. Hartman acknowledged that, due to his knee replacement on June 2, 2009, Plaintiff was unable to work and could not return to his prior occupation as a sheet metal mechanic. R. 76. However, Dr. Hartman opined that the knee was expected to improve with time and continued treatment, and within 12-month it was believed that the Plaintiff would be able to perform less demanding jobs. R. 70, 76. On the basis of Dr. Hartman's assessment, the Plaintiff's DIB claim was denied.

In July 2009, Dr. Bryan opined on a <u>Physical Abilities Form</u>, that Plaintiff was temporarily restricted to sedentary work between August 10, 2009 and November 10, 2009. R. 276. In September 2009, Dr. Bryan also prescribed Plaintiff the use of a cane, as needed, for ambulation. R. 339.

On November 9, 2009, Dr. Bryan again met with the Plaintiff and reported that he was doing reasonably well with regard to his knee. R. 337. On examination, Plaintiff's gait and station were normal. R. 337. His knee had good stability, range of motion was 0 to 90 degrees, and there was only mild swelling. R. 338. X-rays of Plaintiff's knee were satisfactory. R. 338. However, Dr. Bryan also noticed that Plaintiff had recently received an epidural steroid injection

---

[2] State agency medical consultants are members of the teams that make the determinations of disability at the initial and reconsideration levels of review. 20 C.F.R. § 404.1527(f)(1).

which decreased some pain he had been experiencing in his left lower extremity. R. 337.

On that same day, Dr. Bryan signed a <u>Physical Abilities Form</u> which, for the first time, placed the Plaintiff on permanent restrictions. The previous form, signed July 26, 2009, had stipulated a three-month period of: (1) no ladders, stairs, crawling, kneeling squatting, or bending; and (2) occasional (1-2.5 hours) standing or twisting. R. 276. The form signed November 9, however, stipulated <u>permanent</u> limitations of: (1) no vertical ladders, crawling, or kneeling; (2) inclined ladders and stairs only to or from work; (3) occasional (1-2.5 hours) squatting or bending; and (4) frequent (2.5-5.0 hours) standing or twisting. R. 275. These restrictions remained in place on subsequent forms completed by Dr. Bryan in December 2009, R. 274, and February 2010, R. 487.

On November 18, 2009, Carolina Longa, M.D., another State agency medical consultant, reviewed Plaintiff's DIB claim at the reconsideration level. R. 78-88. Like Dr. Hartman, Dr. Longa based her findings on the expectation that Plaintiff's knee would improve with continued time and treatment. R. 83. According to Dr. Longa, within 12-months of surgery, Plaintiff would be able to perform a range of light work with: (1) a limited ability to push and/or pull with his left lower extremity; (2) lifting 20 pounds occasionally and 10 pounds frequently; (3) occasional climbing of stairs; (4) no climbing of ladders, ropes, or scaffolds; (5) occasional (1-2.5 hours) kneeling, crouching, and crawling; and (6) frequent stooping. R. 81-84. However, she also noted that the Plaintiff was only anticipated to regain capacity to stand or walk for up to 6 hours, presuming normal breaks within that 6-hour period. R. 83. Based on Dr. Longa's assessment, the Plaintiff's claim was again denied. R. 87.

In December 2009, Plaintiff complained of neck pain. R. 332, 334, 336. On

8

examination, Plaintiff had tenderness over his cervical spine and occiput. R. 333, 335. He also had decreased range of motion of his neck and some muscle spasms in his trapezial area. R. 333, 335. Muscle strength in his upper extremities was 5/5; his sensation was intact; and his deep tendon reflexes were 2+. R. 333, 335. Plaintiff's gait and station were normal. R. 334. Dr. Crawford surmised that Plaintiff had symptoms from spinal stenosis. R. 335. She prescribed Soma, Motrin, and exercises, and recommended no change in Plaintiff's work abilities and restrictions. R. 274, 333, 335.

In February 2010, Plaintiff returned to Dr. Crawford complaining of neck pain. R. 417-18. Dr. Crawford noted that Plaintiff had been evaluated by Dr. Lesnick, who felt that Plaintiff should be treated conservatively. R. 417. Plaintiff's gait and station were normal. R. 417. He had good range of motion of his shoulder, but with a little bit of crepitus under his acromion. R. 418. Muscle strength in his upper extremities, sensation, and deep tendon reflexes remained normal and unchanged. R. 418. Plaintiff was referred for an MRI of his cervical spine, which took place on March 11, 2010. R. 426-27. The MRI showed disc protrusions with mild central disc stenosis at C4-5, C6-7, C7-T1, T2-3 and mild bilateral neuroforaminal stenosis at C6-7. R. 426-27.

On March 16, 2010, Dr. Crawford reported that Plaintiff had tenderness at about C5-6. R. 415-16. He also had some muscle spasm and limited range of motion of his neck, with some pain going into his right shoulder. R. 416. He had full range of motion of his upper extremities and his muscle strength, sensation, and deep tendon reflexes remained normal. R. 416. Plaintiff's gait and station were normal. R. 416.

On March 25, 2010, Dr. Bryan examined Plaintiff regarding his left knee. R. 412.

Dr. Bryan reported that Plaintiff was doing reasonably well. R. 412. Plaintiff complained of occasional pain in his left knee, which occurred perhaps two times per week. R. 412. He described the pain as mild. R. 412. Plaintiff also stated that he had some limitation of motion. R. 412. On examination, Plaintiff's gait and station were normal. R. 412. His knee had good stability and his range of motion was 0 to 90 degrees. R. 412. Plaintiff had full range of motion of his head, neck, and spine. R. 412. X-rays of Plaintiff's left knee were satisfactory. R. 412. Dr. Bryan advised light activities and a repeat follow-up evaluation in one year. R. 412.

### B.    Testimony Given During August 9, 2012 Hearing Before the Administrative Law Judge

At the time of his administrative hearing, Plaintiff was 49 years old and lived with his wife and daughter. R. 45. In October of 2007, having worked for Northrop Grumman Shipbuilding for over 30 years as a second class specialist (sheet metal worker), Plaintiff sustained a compensable work related injury, for which he was receiving workers' compensation benefits. R. 45, 48, 53-54. Plaintiff was required to look for work in order to continue to receive his workers' compensation benefits. R. 54. Therefore, beginning January 2008, Plaintiff attended vocational rehabilitation sessions Monday through Thursday for an average of 20 minutes per day. R. 45-46, 54. The sessions were approximately 45 miles from his home. R. 46. Plaintiff indicated that he found employment as a security guard; however, shortly thereafter he underwent a total left knee replacement and was taken out of work completely. R. 55. All other attempts at finding employment were unsuccessful. R. 55.

Plaintiff explained that a typical day consisted of attending vocational rehabilitation sessions and preparing dinner for his family. R. 46. Plaintiff testified that he suffered from back, neck, and left knee problems. R. 49. Plaintiff explained that his knee gave way

10

periodically. R. 50. His knee would swell daily, resulting in his having to rest and elevate his leg for 45 minutes. R. 51. Additionally, Plaintiff experienced pain radiating down his leg once or twice a week which required him to stop what he was doing and rest. R. 51. Plaintiff had recently begun to experience pain in his right knee which he discussed with his physician; however, as of the date of the hearing, no objective testing had been scheduled. R. 59.

Plaintiff testified that a side effect of his medications was swollen ankles. R. 57. Plaintiff also experienced problems with his back for which he underwent physical therapy and wore a TENS unit four times a week, eight hours per day. R. 52. Plaintiff also sought treatment for his neck due to stiffness. R. 53.

Plaintiff testified that he could lift about five pounds, sit or stand for 15 minutes at a time, and walk for 30 to 40 yards before needing to stop and rest. R. 59. Also, Plaintiff was not capable of bending or squatting. R. 59. Plaintiff testified that he attended his oldest daughter's graduation from boot camp in Missouri, but did not drive, had to take pain medication for his leg, neck, and back, and indicated that it "was a rough trip" for him. R. 56.

An impartial Vocational Expert ("VE") also testified at Plaintiff's hearing. R. 60-64. The ALJ posed three hypotheticals to the VE during the course of the questioning. First, the ALJ inquired as to whether an individual with Plaintiff's vocational profile (age, education, and previous work experience) could perform any jobs in the national economy if he was limited to: (1) light work, as defined in the Commissioner's regulations; (2) no ladders, ropes, or scaffolds; (3) occasional kneeling, crouching, or crawling; and (4) frequent stooping. R. 61. In response to the above hypothetical, the VE stated that such a person could perform the Plaintiff's past-work as a security guard, and three other alternative positions at the unskilled, light level of work:

(1) assembler (550,000 jobs nationally); (2) cafeteria attendant (42,000 jobs nationally); and (3) parking lot cashier (140,000 jobs nationally). R. 61-62.

In the second hypothetical, the ALJ posed the same individual if he was limited to: (1) light work, as defined in the Commissioner's regulations; (2) no ladders, ropes, or scaffolds; (3) occasional ramps, stairs, stooping, kneeling, crouching, crawling, and use of lower-extremities for pedaling or foot control; and (4) avoidance of concentrated exposure to hazards. R. 62. The VE explained that, amongst the four positions discussed in hypothetical one, only the parking lot cashier might be excluded by the new limitations. R. 62.

Finally, the ALJ posed all the same limitations in hypothetical two, but further stipulated that the individual could no longer work eight hours a day, five days a week, due to the symptoms of his impairment. The VE explained that no jobs existed in the national economy for such an individual due to the individual's need to exceed customary limits on routine rest periods and unexcused, unscheduled absences.

## C. Documents Before the Appeals Council

Subsequent to the ALJ's decision of August 27, 2010, Plaintiff submitted additional evidence to the Appeals Council with his request for review. R. 4, 428-515. This evidence consisted of additional medical records from York River Orthopedic Clinic, dated November 2009 through September 2010.[3] These records included forms that were completed by Dr. Bryan in December 2009 regarding Plaintiff's work status. R. 433-34, 443. Dr. Bryan reported that Plaintiff had been released back to work in a light duty capacity with no vertical ladders, no

---

[3] Many of the records submitted to the Appeals Council were duplicates. R. 429-32, 437-42, 448-61, 472-515.

crawling, no kneeling, and limited squatting and bending. R. 433, 443. Dr. Bryan further stated that Plaintiff was not disabled and that his light duty restrictions were permanent.[4] R. 433.

In August 2010, Plaintiff reported significant improvement in his left knee relative to its condition prior to the total knee replacement. The Plaintiff did, however, report some persistent stiffness and low grade pain in his knee, which he experiences one to two times per week. R. 465. He also reported having ongoing back problems that affected his ambulation. R. 465. On examination, Plaintiff's left knee had mild swelling, but was stable. R. 466. His range of motion remained 0 to 95 degrees. His gait and station remained normal. R. 466.

In September 2010, Plaintiff complained of increased pain in his left knee after doing a significant amount of walking. R. 468. His left knee had minimal to no swelling, good stability, and excellent range of motion. R. 469. Plaintiff could also do a straight leg raise. R. 469. Dr. Bryan gave Plaintiff a knee immobilizer to use for one to two weeks. R. 469.

On September 27, 2010, Dr. Bryan completed a DMV disabled parking placard, indicating that Plaintiff was permanently limited or impaired because he was unable to walk without the use of, or assistance from, any of the following: another person, brace, cane, crutch,

---

[4] On November 23, 2009, Dr. Bryan completed a form which states that the Plaintiff is "not disabled" and suggests "light duty restrictions are permanent." R. 433. That form, however, makes repeated reference to Plaintiff's visit with Dr. Bryan on November 9, 2009, the date on which Dr. Bryan completed a Physical Abilities Form stipulating that Plaintiff can only stand frequently (2.5-5.0 hours) in an 8-hour workday. R. 275. As will be discussed in Part IV(B)(1), that stipulation, if credited, would disqualify the Plaintiff from "light work," as defined at 20 C.F.R. § 404.1567 and interpreted by the Commissioner. See SSR 83-10, 1983 WL 31251 at *6 (finding light work requires the capacity to stand or walk, off and on, for approximately six hours of an eight-hour workday).

There is no evidence that Dr. Bryan is well-versed in the regulatory scheme governing disability claims. Moreover, Dr. Bryan's claims that Plaintiff is "not disabled" or capable of "light duty" do not constitute medical opinion evidence, as they concern the Plaintiff's disability determination and RFC, both of which are matters reserved for the Commissioner. See 20 C.F.R. § 404.1527(d) (stating that opinions concerning whether a Plaintiff is disabled, or conclusory statements concerning a Plaintiff's RFC, are not medical opinions but rather opinions on issues reserved to the Commissioner). These statements do not, therefore, provides a sound basis for disregarding the permanent restrictions set forth in the Physical Abilities Forms completed by Dr. Bryan which, as explained in Part IV(B)(1), substantively conflict with the ALJ's RFC determination that the Plaintiff is capable of "light work."

prosthetic device, wheelchair or other assistive device. R. 471.

The Appeals Council made these documents a part of the record, R. 4, but summarily denied the Plaintiff's request for review, R. 1-3.

## III.    STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews de novo any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

"Determination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); see also Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam). "The claimant has the burden of production and proof in Steps 1–4. At Step 5, however, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)) (internal citation omitted) (internal quotation omitted). If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. Id. (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

First, the claimant must demonstrate that she is not engaged in substantial gainful activity at the time of application. 20 C.F.R. § 404.1520(b). Second, the claimant must prove that he has "a severe impairment . . . which significantly limits . . . [his] physical or mental ability to do basic work activities." Id. § 404.1520(c). Third, if the claimant's impairment matches or equals an impairment listed in appendix one of the Act, and the impairment lasts—or is expected to

14

last—for at least twelve months, then the claimant is disabled. Id. § 404.1520(d); see 20 C.F.R. pt. 404 subpart P app. 1 (listing impairments). If, however, the impairment does not meet one of those listed, then the ALJ must determine the claimant's residual functional capacity ("RFC"). The RFC is determined based on all medical or other evidence in the record of the claimant's case. Id. § 404.1520(e). Fourth, the claimant's RFC is compared with the "physical and mental demands of [the claimant's] past relevant work." Id. § 404.1520(f). If it is determined that the claimant cannot meet the demands of past relevant work then, fifth, the claimant's RFC and vocational factors are considered to determine if he can make an adjustment to other work. If the claimant cannot make such an adjustment, then he is disabled for purposes of the Act. Id. § 404.1520(g)(1).

The Court's review of this five-step inquiry is limited to determining whether: (1) the decision was supported by substantial evidence on the record; and (2) the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson, 434 F.3d at 653. "If the Commissioner's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). In deciding whether to uphold the Commissioner's final decision, the Court considers the entire record, "including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.'" Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (quoting Wilkins v. Sec'y, Dept. of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 434 F.3d at 650 (quoting Craig v. Chater, 76 F.3d

585, 589 (4th Cir. 1996)).  Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  In performing its review, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the" ALJ.  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. (quoting Craig, 76 F.3d at 589).

However, before a Court can determine whether substantial evidence supports the Commissioner's decision it must first ascertain whether the ALJ has considered all relevant evidence and sufficiently explained the weight given to obviously probative exhibits. Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) (quoting Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).  "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).  Thus, judicial review may prove impossible, and remand necessary, where: (1) the ALJ "fail[s] to make requisite findings or to articulate the bases for his conclusions," id.; and (2) the record provides an inadequate explanation of the Commissioner's decision, Meyer, 662 F.3d at 707 (citing DeLoatche, 715 F.2d at 150) (explaining that judicial review is possible so long as the record provides an adequate explanation of the Commissioner's decision).  Moreover, if new and material evidence is made a part of the record, but review of the ALJ's decision is summarily denied by the Appeals Council, remand is appropriate because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder." Meyer, 662 F.3d at 707.

## IV.   ANALYSIS

### A.   The ALJ's Assessment of Medical Opinion Evidence.

With respect to steps one to three in the five-step analysis set forth at 20 C.F.R. § 404.1520, the ALJ found in his August 27, 2010 opinion that the Plaintiff: (1) is not engaged in substantial gainful activity, R. 19; (2) suffers from a number of impairments, namely degenerative disc disease of the spine and a knee replacement, which limit his ability to perform basic work activities, R. 19-20; and (3) does not have an impairment, or combination of impairments, that meets or medically equals one of the impairments in 20 C.F.R., Part 404, Subpart B, Appendix 1, R. 20. Thus, in accordance with 20 C.F.R. § 404.1520(a)(4), the ALJ was required to assess the Plaintiff's RFC.

The ALJ's opinion found that Plaintiff Wilson "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[,] except ... [he] is limited to the occasional use of ramp and stairs, but is not to use ladders, ropes, or scaffolds." The ALJ principally relied upon three types of evidence in assessing the Plaintiff's RFC: (1) medical opinion evidence from Dr. Michael Hartman and Dr. Carolina Longa, State agency medical consultants who addressed the Plaintiff's claim at the initial and reconsideration levels, which the ALJ afforded "significant weight," R. 22; (2) Physical Abilities Forms completed by Dr. Bryan, who oversaw treatment of the Plaintiff's left knee for many years, which the ALJ afforded "slight evidentiary weight," R. 22-23; and (3) descriptions of the Plaintiff's post-operative daily activities, R. 21-22.

Based on this RFC, the ALJ concluded at step four that the Plaintiff is unable to perform any past relevant work. R. 23. The burden then shifted, at step five, to the Commissioner to produce evidence that other jobs exist in the national economy that Plaintiff Wilson can perform

considering his age, education, and work experience. Hancock, 667 F.3d at 472 (citing Hunter, 993 F.2d at 35). Based on testimony of the VE who testified at the hearing on August 9, 2010, the ALJ concluded such jobs exist. Having so found, the ALJ ruled that the Plaintiff is "not disabled." R. 23-24.

In making the RFC determination, the ALJ "afforded significant weight" to the opinions of the State agency medical consultants, Dr. Hartman and Dr. Longa. R. 22. Dr. Hartman first analyzed the Plaintiff's claim at the initial level in the Disability Determination Explanation dated August 4, 2009. R. 67-76. Issued approximately two months after the Plaintiff's total knee replacement, Dr. Hartman's analysis states that Plaintiff cannot do any past relevant work as actually performed, R. 74, but that he "should be able to do light work with postural limitations one year from his knee replacement 6/2/2010." R. 70 (emphasis added). Under the "Personalized Decision Notice," the Plaintiff was informed that "[w]hile you are unable to work at this time as a result of your recent surgery [total knee replacement], your knee is expected to continue to improve with time and continued treatment." R. 76 (emphasis added).

The assessment completed at the reconsideration level by Dr. Longa, dated November 19, 2009, closely tracks Dr. Hartman's initial assessment. R. 78-89. The principal difference is that Dr. Longa states that, one year after the Plaintiff's total knee replacement, he will: (1) never be able to crouch or crawl; and (2) have "limited" ability to use foot controls, push, or pull with respect to his left foot only. R. 82. Under the "Personalized Decision Notice," Plaintiff Wilson was again informed that his "knee is expected to continue to improve with time and continued treatment and allow for you [the Plaintiff] to return to work activity within a 12 month period." R. 87 (emphasis added).

Alternatively, the ALJ afforded "slight evidentiary weight" to the medical opinion of Dr. Bryan, the physician who treated the Plaintiff for knee pain for a number of years. R. 22-23. In assigning Dr. Bryan's opinion slight evidentiary weight, the ALJ briefly summarizes the Physical Abilities Forms completed by Dr. Bryan from July 2009 to February 2010. Summarizing some, but not all of the restrictions set forth in those forms, the ALJ justifies the weight afforded these opinions by merely stating that claiming that his RFC assessment is actually "more restrictive than that of Northrop Grumman as he currently limits the claimant to light work." R. 22-23.

**B.    The ALJ's Failure to Adequately Explain His Evaluation of Medical Opinion Evidence In Accordance With 20 C.F.R. §§ 404.1527 and 416.927 Prevents Meaningful Judicial Review.**

**1.    The ALJ's Failure to Explain Why Dr. Bryan's Medical Opinion Evidence Is Due "Slight Evidentiary Weight" Is Not Harmless Error.**

The Plaintiff has objected to the Magistrate's Report and Recommendation arguing that, amongst other things, the ALJ failed to evaluate Dr. Bryan's medical opinion evidence using the factors outlined in the Social Security regulations. Pl.'s Objs. to Rep. and Rec. of Mag. Judge 3-5, ECF No. 16. Pursuant to 20 C.F.R. § 404.1527(c), unless a treating source's opinion is given controlling weight, an ALJ is required to consider the factors set forth at §§ 404.1527(c)(1)-(6) in deciding the weight to give any medical opinion. This includes: (1) whether the source of the opinion has examined the plaintiff; (2) whether the source of the opinion has a treatment relationship with the plaintiff, and the nature, extent, and length of the treatment relationship; (3) whether the opinion is supported by relevant evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether the source of the opinion is a specialist; and, (6) any other factors that support or contradict the opinion (including "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable

19

medical source has"). 20 C.F.R. §§ 404.1527(c)(1)-(6).

Therefore, upon determining that Dr. Bryan's opinion would not be afforded controlling weight, the ALJ was required to explain his decision to afford that opinion evidence "slight evidentiary weight" by reference to these factors. The ALJ's decision, however, makes no effort to assess Dr. Bryan's opinion based on any of the aforementioned factors.

The Magistrate found that the ALJ's failure in this respect constitutes harmless error because "even had the ALJ assigned controlling weight to the permanent restrictions in Dr. Bryan's Physical Abilities Forms, the resulting RFC determination would have differed little from that of the ALJ, and would under no circumstances has [sic] supported a finding that Plaintiff was disabled." Mag. Judge's Rep. and Rec. 24, ECF No. 14. However, these forms do differ in one very substantive way from the ALJ's RFC determination.

The Plaintiff was first placed on permanent restrictions by Dr. Bryan in November 2009. In summarizing those restrictions, the ALJ states that "no lifting restrictions were indicated but he was thought to be limited in his ability to squat, bend, stand, twist, and operate foot controls." R. 22, 275. Dr. Bryan filled out two more forms, one in December 2009 and the other in February 2010. Both of those forms stipulate "[n]o change in restrictions" from the November 2009 form. R. 274, 497. Thus, based on this characterization of the forms, the ALJ concluded his RFC assessment was actually more restrictive than the restrictions set forth in these forms.

The ALJ's opinion mischaracterizes the forms to the extent that it fails to acknowledge that, in November 2009, Dr. Bryan imposed a permanent restriction on the Plaintiff's ability to stand which would disqualify him from performing "light work." According to the November 2009 form, Plaintiff Wilson is permanently restricted to standing or twisting "frequently," which

20

translates to 2.5-5.0 hours per day.

The ALJ's opinion found that Plaintiff Wilson "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[,] except . . . [he] is limited to the occasional use of ramp and stairs, but is not to use ladders, ropes, or scaffolds." R. 20. Physical exertion requirements of work in the national economy are set forth at 20 C.F.R. § 404.1567. That Section explains that:

> "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it <u>requires a good deal of walking or standing</u>, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."

20 C.F.R. § 404.1567(b) (emphasis added). The Code does not define "a good deal of" with respect to walking or standing, but a Social Security Ruling ("SSR") explains that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251 at *6. Thus, having found that Plaintiff Wilson is capable of performing "light work," without stipulating to any exertional limits on his ability to stand, the ALJ's RFC determination is substantively inconsistent with the <u>permanent</u> restrictions set forth in the <u>Physical Abilities Forms</u> completed by Dr. Bryan.

This Circuit follows the "treating physician rule," which generally requires that the medical opinion evidence of a treating physician be given greater weight. This rule is not, however, absolute. <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001) (citing <u>Hunter</u>, 993 F.2d at 35). According to the regulations, a treating physician's medical opinion evidence is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] case

21

record." 20 C.F.R. § 416.927. Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d at 178 (quoting Craig, 76 F.3d at 590). Ultimately, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Id.

The ALJ in this case was free to afford Dr. Bryan's medical opinion evidence "slight evidentiary weight," but he was not free to disregard the requirement that he explain his reason for doing so in accordance with 20 C.F.R. §§ 404.1527 and 416.927. Such explanation is particularly important in the instant case. Had Dr. Bryan's opinion been given controlling weight, the medical opinion evidence would have supported a finding that the Plaintiff, by virtue of a permanent limitation on his capacity to stand, could not perform "light work" consistent with the ALJ's RFC determination. Before the Court can determine whether the Commissioner's final disability determination is supported by substantial evidence, it needs an explanation consistent with 20 C.F.R. §§ 404.1527 and 416.927 as to why Dr. Bryan's medical opinion evidence is not entitled to controlling weight.

Having failed to present the Court "with findings and determinations sufficiently articulated to permit meaningful judicial review," the Court finds it necessary remand the case. DeLoatche, 715 F.2d at 150 (finding meaningful judicial review impossible where, amongst other things, the ALJ failed to explain why he disregarded the medical opinions of treating physicians). On remand, presuming Dr. Bryan's medical opinion evidence is again not afforded controlling weight, the Commissioner should fully explain the weight given to any medical opinion evidence consistent with the procedures set forth at 20 C.F.R. §§ 404.1527 and 416.927.

2.  **The ALJ's Explanation for Why State Agency Medical Consultants' Assessments Are Due "Significant Weight" Does Not Provide an Adequate Basis for Meaningful Judicial Review.**

In accordance with 20 C.F.R. § 404.1527(e)(2), the ALJ was obligated to evaluate the medical opinion evidence of the State agency medical consultants, Dr. Hartman and Dr. Longa, using the factors set-forth at §§ 404.1527(a)-(d). Amongst other things, the ALJ may have addressed "the consultant's medical specialty and expertise in our [the Commission's] rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions." Id. at 404.1527(e)(2)(ii). Moreover, having afforded the Plaintiff's treating physician, Dr. Bryan, less than controlling weight, the ALJ was required to explain his decision to afford these State consultant opinions "significant weight" by reference to the six factors set forth at 20 C.F.R. §§ 404.1527(c)(1)-(6).

However, in explaining the weight afforded these opinions, the ALJ merely states that they "are consistent with the record as a whole." R. 22. Though the Court appreciates the ALJ's effort to be concise, this does not provide an adequate basis for judicial review. First, consistency with the record is just one of the six factors which the ALJ was required to address. See 20 C.F.R. § 404.1527(c)(4) (stating that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Second, the ALJ fails to evidence this consistency by referencing specific parts of the record. Merely proclaiming that these State agency medical consultant opinions are consistent with the record does not make it so.

The ALJ's failure to adequately explain the weight afforded these State agency medical consultant opinions is not harmless error. As explained in Part IV(B)(1), the ALJ chose to afford the opinion of the Plaintiff's treating physician, Dr. Bryan, "slight evidentiary weight." R. 22.

23

The only other medical opinion evidence discussed by the ALJ was the opinions of Dr. Hartman and Dr. Longa. See R. 17-24. The Defendant has argued that Dr. Hartman and Dr. Longa opined in their respective opinions that the Plaintiff "was capable of performing a range of light work." Def.'s Mem. in Supp. of Mot. for Summ. J., 6 (discussing Dr. Hartman's opinion) & 7 (discussing Dr. Longa's opinion), ECF No. 12. To the contrary, these State medical consultants examined the Plaintiff's records two and five months after his total knee replacement. They do not state that the Plaintiff is capable of light work, but rather that they expect that the Plaintiff will be capable of light work presuming continued improvement. Later medical opinion evidence from Dr. Bryan, which the ALJ references in his decision, suggests that the Plaintiff is not so capable. R. 274-75, 497; see also supra Part IV(B)(1) (explaining that the ALJ's RFC determination that Plaintiff Wilson is capable of "light work" is not consistent with the medical opinion of Dr. Bryan, as represented in the Physical Abilities Forms from December 2009 to February 2010). Thus, the ALJ never explains, and the Court cannot readily determine from the record, what evidence before the ALJ corroborates these state medical consultants' opinions.

### 3. The Appeals Council Failed to Address Relevant Evidence, Which It Made a Part of the Record, That May Refute or Corroborate the Opinions Expressed by the State Agency Medical Consultants.

After issuance of the ALJ decision on August 27, 2010, Plaintiff Wilson timely sought review by the Appeals Council. Plaintiff's Counsel submitted new evidence not before the ALJ, including three physical examination forms, R. 463-69, and a disabled parking placard application, R. 470-71, which are dated more than one year after Plaintiff's total knee replacement surgery. The Appeals Council made those documents a part of the record, R. 4, but summarily denied the Plaintiff's request for review, R. 1-3.

The Court has reviewed this newly submitted evidence, which may refute or corroborate

24

the medical opinion evidence of Dr. Hartman and Dr. Longa, and has concluded that remand for further fact finding is necessary. In reaching that conclusion, the Court finds instructive the Circuit's opinion in Meyer, 662 F.3d at 700. In Meyer, the record before the ALJ suffered from an evidentiary gap, in that it did not express exertional restrictions imposed by a treating physician. Id. at 707. On appeal, the Appeals Council incorporated newly submitted opinion evidence that filled the gap into the record, but summarily denied review of the plaintiff's claim. Id. The Circuit explained that, because it could not determine whether substantial evidence supported the ALJ's denial of benefits, remand was appropriate for review of the newly submitted evidence. Id.

In the case before the Court, the ALJ's opinion also suffers from an evidentiary gap, in that it fails to reference any evidence dated one year after the Plaintiff's total knee replacement which would corroborate the opinions of the State agency medical consultants. Evidence which may refute or corroborate those opinions was submitted to the Appeals Council and made a part of the record, but never actually addressed in its denial of review. Thus, no fact finder has made any findings concerning this newly submitted evidence, nor "attempted to reconcile that evidence with the conflicting and supporting evidence in the record." Id. As the Circuit explained in Meyer, "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder." Id. Therefore, remand is further warranted to permit consideration of any evidence dated one year after Plaintiff's total knee replacement surgery. See Meyer, 662 F.3d at 707 (remanding case pursuant to a reviewing court's authority under 42 U.S.C. § 405(g)).

On remand, the Commissioner should fully explain his decision to afford these State agency medical consultant opinions "significant weight" using the six factors set forth at 20

C.F.R. § 404.1527(c)(1)-(6), and to the extent he relies on consistency with the record, cite specific instances of consistency so that the Court may adequately consider whether the RFC determination is supported by substantial evidence. Moreover, if the Commissioner finds that the evidence submitted to the Appeals Council provides an inadequate basis for assessing the Plaintiff's exertional capacities one year after his surgery, the Commissioner should refer Plaintiff Wilson for a further consultative examination by an independent medical specialist.

C. **The ALJ Failed to Adequately Develop the Record Concerning Other Jobs in the National Economy That Plaintiff Wilson Can Perform.**

As previously discussed, the Commissioner bears the burden of producing evidence that other jobs exist in the national economy that Plaintiff Wilson can perform considering his age, education, and work experience. Hancock, 667 F.3d at 472 (citing Hunter, 993 F.2d at 35). In assessing whether such positions exist, the ALJ acknowledges that there are some limitations which would prevent the Plaintiff from performing "all or substantially all" of the requirements at the "light work" level. R. 23. At the August 9, 2010 hearing, the ALJ posed three hypotheticals to the VE concerning job availability for a hypothetical person with Plaintiff Wilson's attributes. All of these hypotheticals involved labor at the "light work" level, with some specific limitations stipulated. Based on the VE's responses, the ALJ concluded that there are jobs available at the "light work" level which the Plaintiff could perform notwithstanding those limitations.

Pursuant to 20 C.F.R. § 404.1567(b), "[i]f someone can do light work, we [the Commission] determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Neither the ALJ's RFC determination, see generally R. 14-24, nor the permanent restrictions set forth in

Dr. Bryan's <u>Physical Abilities Forms</u>, R. 274-275, 498, evidence a loss of fine dexterity or an inability to sit for long periods of time.

As explained in Parts IV(B)(1)-(3), the principal deficiency with the ALJ's decision is its failure to adequately explain how weight was afforded to medical opinion evidence in the record. But, that deficiency notwithstanding, the Court may still have been able to find that the Plaintiff is "not disabled" by virtue of his capacity to make an adjustment to work at the "sedentary" level. 20 C.F.R. § 404.1520(g)(1) ("If you can make an adjustment to other work, we will find you not disabled. If you cannot, we will find you disabled."). However, the Court could not reach that conclusion because the ALJ failed to question the VE concerning what, if any, jobs might be available to the Plaintiff at the sedentary level, and there is nothing in the record to suggest such jobs exist.

On remand, in reconsidering the Plaintiff's exertional capacities, the Commissioner should also further consult with a VE concerning what jobs, if any, would be available to the Plaintiff in the national economy at any exertional level he might be capable of performing.

## V.  CONCLUSION

The record before the Court does not permit meaningful review of the Commissioner's determination. For the reasons stated herein, the Court hereby: (1) **REJECTS** the Magistrate's Report and Recommendation; (2) **DENIES** the Plaintiff's Motion for Summary Judgment, ECF No. 9; (3) **DENIES** the Defendant's Motion for Summary Judgment, ECF No. 11; (4) **REVERESES** the Commissioner's disability determination; and (5) **REMANDS** the Case for a rehearing pursuant to the Court's authority under 42 U.S.C. § 405(g).

On remand, the Commissioner is **DIRECTED** to: (1) refer Plaintiff Wilson for a further consultative examination by an independent medical specialist if the Commissioner finds that the

27

evidence submitted to the Appeals Council provides an inadequate basis for assessing the Plaintiff's exertional capacities one year after his surgery; (2) consult a vocational expert concerning what jobs, if any, would be available to the Plaintiff in the national economy at any exertional level he might be capable of performing; (3) fully explain the weight afforded to any medical opinion evidence in any future determination pursuant to the requirements of 20 C.F.R. §§ 404.1527 and 416.927; and (4) conduct further proceedings consistent with this decision.

The Clerk is **DIRECTED** to deliver a copy of this Order to all Counsel of Record in this case.

**IT IS SO ORDERED**.

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA,
September 29, 2012